**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dennis Victor Tourville, Jr., | No. CV-22-00908-PHX-DWL |
| Petitioner, | **ORDER** |
| v. | |
| David Shinn, et al., | |
| Respondents. | |

On May 26, 2022, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("the Petition"). (Doc. 1.) Later, on December 20, 2022, Petitioner filed a motion to amend. (Doc. 25.)

On February 23, 2023, Magistrate Judge Fine issued a report and recommendation ("R&R") concluding that the Petition should be dismissed with prejudice and that the motion to amend should be denied. (Doc. 35.) Afterward, Petitioner filed objections to the R&R (Doc. 40) and Respondents filed a response (Doc. 43). Petitioner then filed a motion to strike Respondents' response (Doc. 44) and a motion for contempt (Doc. 45).

For the following reasons, the Court overrules Petitioner's objections, adopts the R&R, denies Petitioner's most recent motions, and terminates this action.

I.    Background

*Underlying Crimes*. In 2006, Petitioner became involved in a romantic relationship with L.B., who is the mother of three daughters, F.R., D.R., and K.R. (Doc. 35 at 2.) Petitioner and L.B. resided together and the children stayed with them periodically. (*Id.*)

On November 16, 2010, one of L.B.'s daughters, F.R., told the police that Petitioner had been raping her over a two-year period while she was living in his residence.  (*Id.*) F.R. reported that Petitioner continually engaged in anal, vaginal, and oral sexual activity with her, including one incident where, after she had been involved in a car accident, Petitioner gave her some unknown medication and later told her that they had sex that night, even though she had no memory of that occurring.  (*Id.*)  Petitioner also told F.R. that he had photographs of their sexual encounter but he did not show them to her.  (*Id.*) F.R. further reported that, on other occasions, Petitioner would drive her to distant, secluded areas and tell her if she did not have sex with him, he would drop her off and make her walk home.  (*Id.*)  F.R. further reported that, in October 2010, she reached a point where she could no longer take the abuse and moved in with her father and family.  (*Id.* at 3.)  Petitioner became angry and began an inundation of harassing behavior, starting with hacking into F.R.'s Facebook account and posting unauthorized nude photos of her and comments stating they were having a sexual relationship.  (*Id.*)  F.R. attempted to obtain an order of protection against Petitioner and he successfully had it quashed and was instead able to get one of his own. (*Id.*)  Petitioner attempted to file over 20 police reports against F.R., including an alleged bomb threat.  (*Id.*)  He would then contact her, stating that he would drop all of his allegations if she would just talk to him.  (*Id.*)  When these efforts were unsuccessful, Petitioner purchased a cell phone and registered it in F.R.'s name.  (*Id.*) He then sent threatening messages from the phone to himself and included an electronic signature in F.R.'s name.  (*Id.*)  Petitioner also submitted a petition with Recovery Innovations of Arizona, stating that F.R. was homicidal and suicidal, resulting in F.R. being involuntarily committed for psychiatric evaluation.  (*Id.*)  Computers confiscated from Petitioner's home during the execution of the search warrant yielded multiple non-consensual photos and videos Petitioner took of F.R.  (*Id.*)  Several firearms were also found near the area where Petitioner slept in the home.  (*Id.*)

On November 29, 2010, another of L.B.'s daughters, D.R., spoke with police and reported that Petitioner once had her get completely undressed while she was alone with

him.  (*Id.*)[1] He then asked her if she wanted him to play with her "thing." (*Id.*) She stated she did not but he pushed her down on a couch and pushed her legs apart. (*Id.*) He unzipped his pants and D.R. began crying, stating repeatedly she just wanted to go home. (*Id.*) Petitioner stopped and took her home. (*Id.*) D.R. stated she was 12 at the time of this incident. (*Id.*) She recounted three other incidents where Petitioner made her show him her breasts and made sexual comments. (*Id.*)

On March 29, 2011, L.B.'s third daughter, K.R., met with police to talk about several sexual incidents that had occurred between her and Petitioner. (*Id.*) She recalled the first episode happening when she was either 13- or 14-years-old. (*Id.*) She stated that Petitioner sat next to her on a couch while she was watching a movie, placed his hand inside her pants and underwear, and began massaging her private area. (*Id.*) K.R. stated she quickly got up off the couch and said she was going to bed. (*Id.*) On other occasions, Petitioner had pulled her shirt and attempted to look at her breasts but she immediately pulled away. (*Id.*)

*Arrest*. On October 31, 2012, Petitioner was arrested. (*Id.*) When being taken into custody, Petitioner stated that he was a victim of F.R.'s "fatal attraction" and "made no other comments." (*Id.*)

*Trial Court Proceedings*. On November 6, 2012, a Maricopa County grand jury returned a 22-count indictment charging Petitioner with nine counts of sexual assault, each a class two felony; two counts of voyeurism, each a class five felony; one count of stalking, a class five felony and a domestic violence offense; two counts of computer tampering, each a class five felony and one a domestic violence offense; one count of aggravated harassment, a class six felony and a domestic violence offense; one count of perjury, a class four felony; one count of kidnapping, a class two felony and a dangerous crime against children; one count of attempted child molestation, a class three felony and a dangerous crime against children; two counts of attempted sexual abuse, each a class four felony and

---

[1]    Although the R&R does not specifically identify D.R. as the source of these allegations, context suggests that she was the reporting party. At any rate, the analysis in this order does not turn on this point.

a dangerous crime against children; one count of child molestation, a class two felony and a dangerous crime against children; and one count of misconduct involving weapons, a class four felony. (*Id.* at 4.)  The indictment reflects that some of the counts (Counts 1-15) pertained to Petitioner's conduct toward F.R., other counts (Counts 17-19) pertained to Petitioner's conduct toward D.R., and still other counts (Counts 20-21) pertained to Petitioner's conduct toward K.R.  (Doc. 18-1 at 14-20.)

Petitioner was represented by appointed counsel, Rodrick Carter, during the trial court proceedings.  (Doc. 35 at 4.)

On February 21, 2014, pursuant to a plea agreement, Petitioner pleaded guilty to one count of child molestation (Count 20); two counts of sexual assault (Counts 3 and 4); one count of attempted child molestation (amended Count 18); and one count of attempted sexual abuse (amended Count 19). (*Id.*) The plea agreement called for a stipulated sentence of 10 years' imprisonment for Count 20, 5.25 to 8.5 years' imprisonment each for Counts 3 and 4, and lifetime probation with sex offender registration and restitution for amended Counts 18 and 19.  (*Id.*)  The plea agreement included that all imprisonment "must be served as flat time, and must run consecutively (20.5 to 27 years DOC)."  (*Id.*)

On March 21, 2014, the superior court sentenced Petitioner to a 10-year term of imprisonment on Count 20, consecutive 8.5-year terms of imprisonment for Counts 3 and 4 following Petitioner's imprisonment on Count 20, and lifetime probation for amended Counts 18 and 19 following Petitioner's release from prison.  (*Id.* at 5.)  The superior court also made a finding that Petitioner knowingly, intelligently, and voluntarily waived all pertinent constitutional and appellate rights by pleading guilty.  (*Id.*)

Also on March 21, 2014, Petitioner signed and acknowledged his receipt of a form titled "Notice of Rights of Review After Conviction and Procedure."  (*Id.*)  This form explained that Petitioner did not have a right to appeal if he pleaded guilty and that relief could be sought only by a petition for post-conviction relief ("PCR").  (*Id.*)  This form further stated that Petitioner had 90 days following entry of judgment and sentence to file a PCR notice and that if Petitioner wanted to file a PCR notice, Petitioner could contact his

lawyer or Petitioner could obtain a form to file his PCR notice himself.  (*Id.*)

*Non-PCR Motions And Appeals*.  Petitioner did not file a PCR notice within ninety days of his sentencing.  (*Id.* at 6.)  Petitioner did, however, file numerous motions in the superior court case (Case No. CR2012-156586-002) in which he had been convicted.  (*Id.*)  For example, on December 28, 2017—more than three years after sentencing—Petitioner filed a "Motion to Compel Rodrick Carter to Release Entire File to [Petitioner]."  (*Id.*)  On July 3, 2018, Petitioner filed a letter in the superior court inquiring as to the status of his motion to compel.  (*Id.*)  Petitioner also filed a petition to the Arizona Supreme Court regarding the superior court's lack of ruling on his motion to compel, and on July 13, 2018, the Arizona Supreme Court issued an order referring the matter back to the superior court and taking no further action.  (*Id.*)  On July 31, 2018, the superior court issued an order taking no further action on Petitioner's motion to compel, stating that the court did not have attorney Rodrick Carter's file and that only Rodrick Carter could release the file to Petitioner.  (*Id.*)

On October 26, 2018, Petitioner filed a letter in the superior court.  (*Id.*)  In his letter, Petitioner argued that the detective and prosecutor in his case presented false information to the grand jury, that Petitioner did not knowingly or willingly accept the plea agreement because he was blind and could not read the plea agreement, that the plea agreement was altered, and that the initials on the plea agreement were not Petitioner's.  (*Id.* at 6-7.)  On October 30, 2018, the superior court issued a minute entry stating that it did "not find any basis to take any further action on" Petitioner's October 2018 correspondence.  (*Id.* at 7.)

On December 10, 2018, Petitioner purported to appeal his convictions and sentences.  (*Id.*)  On January 18, 2019, the Arizona Court of Appeals dismissed Petitioner's appeal, finding that it lacked jurisdiction and that if Petitioner wished to seek review of his convictions or sentences, he was required to proceed pursuant to Ariz. R. Crim. P. 32 because his judgment and sentence were entered pursuant to a plea agreement.  (*Id.*)

On December 14, 2018, Petitioner filed a second notice of appeal.  (*Id.*)  This appeal was again dismissed on jurisdictional grounds.  (*Id.* at 8.)

On July 9, 2019, Petitioner moved for sanctions against attorney Rodrick Carter because Rodrick Carter had allegedly not sent Petitioner his file.  (*Id.*)  Petitioner further requested audio or video transcripts of Petitioner reading and signing his plea agreement.  (*Id.*)  On August 15, 2019, the superior court found that Rodrick Carter had not complied with the previous court order to provide Petitioner's file and file a corresponding notice of compliance and set a hearing for Rodrick Carter to show cause for his failure to do so.  (*Id.*)

On February 19, 2020, attorney Stephen Johnson entered a special appearance for Rodrick Carter and filed an affidavit in which Rodrick Carter swore that he sent Petitioner a paper copy of his case file in August 2018 and also sent Petitioner a compact disk with digital copies of the file in October 2018.  (*Id.* at 9.)  Based on this affidavit, the superior court vacated the order to show cause hearing pertaining to Rodrick Carter without imposing any sanctions.  (*Id.*)

On July 24, 2020, Petitioner filed a "Motion for Appeal of Conviction."  (*Id.*)  On September 9, 2020, the Arizona Court of Appeals dismissed this appeal on jurisdictional grounds.  (*Id.*)

On April 16, 2021, Petitioner filed a "Petition for Review" in the Arizona Supreme Court.  (*Id.*)  On August 11, 2021, the Arizona Supreme Court denied Petitioner's petition for review without discussion.  (*Id.*)  Petitioner later filed, and the Supreme Court later denied, several motions for reconsideration.  (*Id.* at 9-10.)

*First PCR Proceeding*.  In May 2019, Petitioner filed a *pro se* PCR notice in the superior court.  (*Id.* at 10.)  In this notice, Petitioner checked boxes stating that he intended to raise claims that counsel provided ineffective assistance, that newly discovered material facts existed, that Petitioner's failure to timely file a PCR notice was not Petitioner's fault, that a significant change in the law would probably overturn Petitioner's convictions or sentences, and that facts existed to establish Petitioner's actual innocence by clear and convincing evidence.  (*Id.*)  Petitioner also asserted that "newly discovered material" existed.  (*Id.*)

On June 14, 2019, the superior court dismissed Petitioner's first PCR notice.  (*Id.*)

- 6 -

The superior court found that Petitioner's first PCR notice was required to be filed by June 19, 2014, causing Petitioner's first PCR notice to be untimely by nearly five years. (*Id.*) The superior court further found that Petitioner did not factually support his Ariz. R. Crim. P. 32.1(f) claim that he was not at fault for the untimeliness of the first PCR notice. (*Id.*) The record does not reflect that Petitioner filed a petition for review in the court of appeals of the superior court's dismissal of Petitioner's first PCR notice. (*Id.* at 11.)

*Second PCR Proceeding.* In June 2019, Petitioner filed a second PCR notice in the superior court and checked boxes that he intended to raise the same claims as in his first PCR notice. (*Id.*)

In July 2019, Petitioner filed a PCR petition and checked boxes that he was raising claims of an unconstitutional identification introduced at trial; the introduction at trial of a statement obtained without a lawyer's presence when representation was constitutionally required; ineffective assistance of counsel; unconstitutional suppression of evidence by the state; unconstitutional use of perjured testimony by the state; an unlawfully induced guilty plea; the abridgment of any other constitutional or state legal right; the existence of newly discovered material; lack of jurisdiction in the trial court; the use at sentencing of a prior conviction that was unconstitutionally obtained; the failure of Petitioner's counsel to file a timely notice of appeal; and sentencing for crimes that Petitioner did not commit. (*Id.*)

On July 18, 2019, the superior court dismissed Petitioner's second Rule 32 proceeding. (*Id.* at 12.) The superior court recognized that while a petitioner may file a second PCR notice raising IAC of first PCR counsel, Petitioner had represented himself during first PCR proceedings and therefore could not raise a claim of IAC of first PCR counsel. (*Id.*) As for Petitioner's alleged lack of fault for the untimeliness of his PCR petition, the superior court found that Petitioner waived his right to direct appeal by pleading guilty; that Petitioner was informed of his responsibility to file a PCR notice within 90 days of sentencing; and that the court previously rejected Petitioner's argument under Ariz. R. Crim. P. 32.1(f) in Petitioner's first PCR proceedings. (*Id.*) Petitioner later filed, and the superior court later denied, a motion for reconsideration. (*Id.*)

Months later, Petitioner filed three appeals: (1) an appeal of the superior court's denial of his motion for reconsideration; (2) an appeal of the superior court's denial of his motion to amend his second PCR notice, and (3) an appeal of the superior court's denial of his request for sanctions against Rodrick Carter. (*Id.* at 13.)  On May 18, 2020, the Arizona Court of Appeals issued three orders dismissing Petitioner's appeals, finding that the underlying orders were not appealable. (*Id.*)

*This Action*.  On May 26, 2022—two years after the Arizona Court of Appeals dismissed his appeals arising from the second PCR proceeding—Petitioner initiated this action by filing the Petition. (Doc. 1.)  The Court previously explained that the Petition raises 13 grounds for relief. (Doc. 8.)

*The R&R*.  The R&R concludes that the Petition should be dismissed because it is time-barred by the statute of limitations. (Doc. 35.)  More specifically, the R&R states that AEDPA's one-year limitations period began running on June 20, 2014, which is 90 days after sentencing and thus when Petitioner's convictions and sentences became final under Arizona law. (*Id.* at 15-17.)  The R&R further notes that "Petitioner did not file these habeas proceedings until May 26, 2022, nearly seven years after AEDPA's statute of limitations expired." (*Id.* at 17.)  Thus, the R&R explains that "these habeas proceedings were untimely filed unless statutory tolling, equitable tolling, and/or the actual innocence gateway apply." (*Id.*)

As for statutory tolling, the R&R concludes it is inapplicable because "an untimely PCR notice does not statutorily toll AEDPA's limitations period" and "[t]he superior court correctly determined that Petitioner's first PCR notice in May 2019 was untimely by approximately five years." (*Id.* at 17-18.)

As for equitable tolling, the R&R concludes that it, too, is unavailable. (*Id.* at 18-22.)  On this point, the R&R elaborates:

> Petitioner argues that he is entitled to equitable tolling due to Rodrick Carter's delay in providing Petitioner his case file and eventual failure to provide Petitioner's case file in its entirety; due to "government interference" insofar as Petitioner's prison delayed Petitioner's treatment for cataracts, rendering Petitioner blind and unable to read or write; and due to Petitioner's

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

medical impairment of blindness. . . .

Despite Petitioner's arguments, Petitioner does not show that he has been pursuing his rights diligently. Although Petitioner states that he began sending letters to Rodrick Carter in 2014 with no response, the record does not reflect that Petitioner requested anything related to his file until 2017. Notably, on the day of sentencing, Petitioner received and signed a "Notice of Rights of Review After Conviction and Procedure" form which . . . clearly informed Petitioner that it was his responsibility to file a timely PCR notice within 90 days of sentencing. Despite Petitioner acknowledging his receipt of this form, Petitioner did not file his first PCR notice until May 24, 2019, over five years later. Further, Petitioner did not file his federal habeas Petition until two years after his second PCR proceeding concluded in May 2020. Petitioner submitted multiple other filings in the state courts starting in 2017, suggesting that no barriers to filing existed prior to the May 2019 filing of Petitioner's first PCR notice. Petitioner's delay in seeking his case file, in filing his first PCR notice, and in filing these proceedings after Petitioner's second PCR proceedings demonstrate that Petitioner's actions lack the due diligence required for equitable tolling.

As for Petitioner's medical impairments, Petitioner states that he was blind until August 2015. However, blindness does not automatically warrant equitable tolling. As discussed above, Petitioner was aware of the filing requirements for a timely PCR notice. Moreover, even if Petitioner's alleged inability to read or write had tolled AEDPA's statute of limitations, Petitioner has not otherwise shown diligence. Petitioner did not file a PCR notice in state court until May 2019, nearly four years after the conclusion of the period during which Petitioner alleges complete blindness. Petitioner's medical impairments thus cannot establish an extraordinary circumstance warranting equitable tolling.

(*Id.* at 21-22, citations omitted.)

As for actual innocence, the R&R concludes that although "Petitioner references the standard for actual innocence in his reply in support of the Petition, [he] does not connect this standard to the record in his own case. Although Petitioner does not expressly argue that actual innocence excuses his untimely filing of these proceedings, Petitioner argues in several grounds of the Petition that the events underlying his convictions did not happen or did not constitute crimes. Petitioner also argues that he was convicted with false and insufficient evidence. Yet, '[e]vidence that merely undercuts trial testimony or casts doubt on the petitioner's guilt, but does not affirmatively prove innocence, is insufficient to merit

- 9 -

relief on a freestanding claim of actual innocence.'" (*Id.* at 22-23.)  The R&R further notes that "[m]ost of Petitioner's attachments existed at the time of Petitioner's March 2014 sentencing and are not new evidence.  The April 2019 and November 2020 statements of Petitioner's daughters discuss each daughter's perspective that Petitioner was a good father . . . [but] do not discuss the events underlying the convictions in case CR2012-156586-002. Petitioner does not explain how the statements of Petitioner's daughters are 'new, reliable evidence' that would likely prevent a jury from convicting Petitioner, nor is such apparent from review of the statements." (*Id.* at 24-25.)  The R&R also provides an extensive discussion of why certain other materials provided by Petitioner are insufficient to satisfy the actual innocence gateway.  (*Id.* at 25-27.)

Finally, as for Petitioner's motion to amend, the R&R concludes it should be denied because "Petitioner has unduly delayed in moving to amend and his proposed Ground 14 is untimely in any event, making the proposed amendment futile." (*Id.* at 28-32.)  In a footnote, the R&R adds: "Proposed Ground 14 also appears to be meritless and subject to other defenses, but the Court need not reach these issues in ruling on the Motion to Amend given Petitioner's undue delay and the clear untimeliness of the proposed ground." (*Id.* at 32 n.21.)

II.    Legal Standard

A party may file written objections to an R&R within 14 days of being served with a copy of it.  Rules Governing Section 2254 Cases 8(b) ("Section 2254 Rules").  Those objections must be "specific."  *See* Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.").  "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  *See* Fed. R. Civ. P. 72(b)(3).

District courts are not required to review any portion of an R&R to which no specific

objection has been made.  *See, e.g., Thomas v. Arn*, 474 U.S. 140, 149-50 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise.").  Thus, district judges need not review an objection to an R&R that is general and non-specific.  *See, e.g., Warling v. Ryan*, 2013 WL 5276367, *2 (D. Ariz. 2013) ("Because de novo review of an entire R & R would defeat the efficiencies intended by Congress, a general objection 'has the same effect as would a failure to object.'") (citations omitted); *Haley v. Stewart*, 2006 WL 1980649, *2 (D. Ariz. 2006) ("[G]eneral objections to an R & R are tantamount to no objection at all.").

III.    Analysis

The Court has carefully reviewed Petitioner's oversized objections to the R&R. (Doc. 40.)  Petitioner begins by challenging the timeliness and accuracy of the presentence report in his criminal case, by making various assertions about the plea process in that case, and by making various assertions about his post-sentencing conduct.  (*Id.* at 1-5.)  Next, Petitioner provides case citations and general descriptions of the law concerning AEDPA, statutory tolling, and equitable tolling.  (*Id.* at 5-7.)  Next, Petitioner asserts: "Despite the petitioners diligence, the petitioner could not get administrative help in obtaining his legal materials and complete court file."  (*Id.* at 8.)  Next, petitioner contends he is entitled to equitable tolling because his "court appointed attorney held all court documents for over 4 years.  As of the writing of this document, the petitioner still does not have his complete court file."  (*Id.*)  Next, Petitioner argues that his medical conditions constitute extraordinary circumstances.  (*Id.* at 9.)  Next, Petitioner offers a lengthy discussion of the development of the actual-innocence exception.  (*Id.* at 9-11.)  Next, in a seeming attempt to show that he is actually innocent of the charges to which he pleaded guilty, Petitioner makes such statements as: "The petitioner begged her to try oral sex.  She put her mouth on his penis.  Again where is the crime.  It's the petitioners 1st amendment right of freedom

of speech." (*Id.* at 11.)  Next, Petitioner offers a discussion of the "cause and prejudice" and "miscarriage of justice" standards for overcoming a procedural default.  (*Id.* at 11-14.)  Next, Petitioner elaborates on his reasons why he believes he is actually innocent of the crimes to which he pleaded guilty, including his seeming belief that the First Amendment provides a defense to the crimes of sexual assault and child molestation.  (*Id.* at 15-18.)  Finally, Petitioner challenges the recommendation that his motion to amend be denied.  (*Id.* at 18-20.)

Petitioner has not identified any basis for departing from the recommendations set forth in the R&R.  As an initial matter, Petitioner's filing is best understood as an impermissible general objection to the R&R—he largely fails to offer *specific* objections to the analysis in the R&R and instead attempts to broadly raise the same arguments he raised during earlier stages of this case, without explaining with specificity with the R&R's rejection of those arguments was erroneous.  This is not an appropriate way to object to an R&R and results in forfeiture.  *Thomas*, 474 U.S. at 149-50; *Reyna-Tapia*, 328 F.3d at 1121; *Warling,* 2013 WL 5276367 at *2; *Haley,* 2006 WL 1980649 at *2.  Nevertheless, even if Petitioner's objections weren't forfeited, the Court agrees on the merits with the R&R's painstaking analysis of the issues.  The bottom line is that Petitioner pleaded guilty in 2014 and received a sentence that was permitted under his plea agreement; the trial judge made a finding that Petitioner's guilty plea was knowing, voluntary, and intelligent; Petitioner was provided express notice of the deadlines for seeking post-conviction relief; and Petitioner thereafter failed to file a PCR notice for more than five years and waited more than two years after the rejection of his second PCR proceeding to initiate this action.  The Court thus agrees with the R&R's finding that the Petition is time-barred and also agrees with the R&R's rationale for recommending the denial of Petitioner's motion to amend.

IV.   Other Motions

On May 1, 2023, Petitioner filed a motion to strike Respondents' response to his objections (Doc. 44) and a motion "to hold the state in contempt" (Doc. 45).

Both motions are denied.  Both are premised on Respondents' purported "continued use of misleading false statements to deceive the court" (Doc. 44 at 1, Doc. 45 at 1), but the challenged statements are not false or deceptive and Petitioner's disagreement with the accuracy of those statements would not, at any rate, justify striking Respondents' filing or holding "the state" in contempt.

Accordingly, **IT IS ORDERED** that:

1.      Petitioner's objections to the R&R (Doc. 40) are **overruled**.

2.      The R&R (Doc. 35) is **accepted**.

3.      The Petition (Doc. 1) is **dismissed with prejudice**.

4.      The motion to amend (Doc. 25) is **denied**.

5.      The motion to strike (Doc. 44) is **denied**.

6.      The motion for contempt (Doc. 45) is **denied**.

7.      A certificate of appealability and leave to proceed *in forma pauperis* on appeal are **denied** because the denial of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

8.      The Clerk shall enter judgment accordingly and terminate this action.

Dated this 26th day of May, 2023.

Dominic W. Lanza
United States District Judge